Dominic S. Rinaldi, Respondent, v Viking Penguin, Inc., et al., Appellants.

First Department, February 26, 1980

### APPEARANCES OF COUNSEL

*Victor A. Kovner* of counsel *(Harriette K. Dorsen* with him on the briefs; *Lankenau Kovner & Bickford,* attorneys), for Jack Newfield and another, appellants.

*Martin Garbus* of counsel *(Arthur J. Ginsburg* and *Lois F. Wasoff* with him on the briefs; *Frankfurt, Garbus, Klein & Selz,* attorneys), for Viking Penguin, Inc., appellant.

*Irwin N. Wilpon* of counsel *(Hoberman, Sussman, Bloom & Reich, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

SILVERMAN, J.

In this action for libel, defendants Viking Penguin, Inc., publisher of the alleged offending book, and Newfield and Du Brul, the authors, appeal from the denial of their motions for summary judgment dismissing the complaint.

The question on this appeal is whether there is a triable issue of fact as to (a) the defense of the Statute of Limitations and (b) a defense under the doctrine of *New York Times Co. v Sullivan* (376 US 254). The question must be considered separately as to publisher and authors.

A hardcover edition of the book "The Abuse of Power" containing the alleged libelous passage was published by defendant publisher Viking Penguin, Inc., on May 13, 1977. A paperback edition of the same book made from unsold copies of the original printing was issued by the publisher under the trade name "Penguin Books" in May, 1978.

The period of limitations for libel actions is one year. (CPLR 215, subd 3.) This action was begun on July 28, 1978, more than one year after the publication of the hardcover edition but less than one year after the paperback edition. The claim sued on relates to the publication of the paperback edition.

New York has adopted the "one publication" rule, i.e., "that the publication of a libelous book, involving styling, printing, binding and those other acts which enable a publisher on a given date to release to the public thousands of copies of a single printing or impression, affords the one libeled a legal basis for only one cause of action which arises when the finished product is released by the publisher for sale in accord with trade practice" *(Gregoire v Putnam's Sons,* 298 NY 119, 126), and that thus the Statute of Limitations runs from that single publication or release date even though sales of the book from stock may continue a long time thereafter. If, however, the book is later "reissued or republished," the Statute of Limitations with respect to that reissue or republication, commences to run anew. *(Supra,* at p 124.)

Whether a particular event constitutes a reissue or republication so as to give rise to a new cause of action with a new period of limitations is frequently difficult to determine, depending on the facts of each particular case. Here the book

was not reprinted. The copies that became the paperback edition were the unsold portions of the original printing, some of them bound and some of them unbound. As to the bound copies, the hard cover was ripped off and new paperbacks put on with a title page and copyright page substituted. As to the unbound copies, it was apparently cheaper to reprint the first "signature," i.e., the first 32 pages, so as to make the changes on the title page and the copyright page, rather than just ripping off the first sheet and substituting a new first sheet.

We do not think the question is entirely a mechanical one. The book was presented to the public as a new publication. It was the paperback edition. It had a different price, substantially lower than the hardcover edition. It was published under a different trade name—"Penguin Books" rather than "The Viking Press"; (the changes in the title page and the copyright page essentially relate to this change of trade name). The copyright page of the hardcover edition contained the notation "First published in 1977 by The Viking Press". The copyright page of the paperback edition said: "First published in the United States of America by The Viking Press 1977 Published in Penguin Books 1978". This legend was also preceded by 10 lines giving the names of various companies having Penguin Books as part of their corporate title, including references to "Penguin Books, 625 Madison Avenue," one of the trade names of defendant publisher and the names of the English, Australian, Canadian and New Zealand Penguin Books corporations. A brief item about the paperback edition appeared in the *New York Times* Sunday book review on April 23, 1978, in the section headed "Paperbacks: New and Noteworthy". On balance, we think the defendant publisher held this out as a new edition or publication, a reissue, and it does have that effect for purposes of the Statute of Limitations.

Defendants further contend that the complaint must be dismissed under the doctrine of *New York Times Co. v Sullivan* (376 US 254, 280, *supra),* because of failure to establish that the publication was made with "actual malice," as defined in that case, i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not." We think that even under the exacting standard of that case which requires such "malice" to be shown with "convincing clarity" (376 US *supra,* at pp 285-286; see *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 379), there is enough of an

issue of fact so that the publisher's motion for summary judgment should be denied.

The test of "reckless disregard" has been said to be that " '[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.' " *(Trails West v Wolff,* 32 NY2d 207, 219, quoting *St. Amant v Thompson,* 390 US 727, 731.)

In the present case, the portion of the publication particularly complained of is that plaintiff, a New York State Supreme Court Justice had "twice personally gone to police stations to release alleged Mafioso Santo Patti, who had twenty prior gambling arrests, rather than wait for Patti to be arraigned before another judge the next morning. Police records show that Justice Rinaldi did this on April 18, 1969, and again on June 15, 1970." Shortly after the publication of the hardcover edition, plaintiff notified defendant publisher Viking that this statement was untrue and that he had never gone to a police station to release anyone. Viking inquired of the authors and received an opinion letter from the authors' lawyers indicating their view that what plaintiff had done was improper, whether done in the police station or in the courthouse. The publisher wrote plaintiff stating that the authors had relied on a report in the *New York Times* which seemed to support the statement but that "as you say that is not the case, without further investigation and in deference to your request we are prepared to rewrite the sentence you complain of in subsequent printings, hardcover and softcover, so as to delete any reference to going to police stations." While plaintiff declared this was unsatisfactory to him, a notation to make the correction in future printings was placed in its correction file by the publisher. However, as the paperback edition did not involve a reprinting, and, indeed, the persons in the publisher's organization who arranged for the paperback edition were unaware of this notation, the paperback edition did not make the change. We cannot say from the present record that there is not " 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth' " of the published statement. *(Trails West v Wolff,* 32 NY2d *supra,* at p 219.)

There is a suggestion in *New York Times Co. v Sullivan* (376 US 254, 287, *supra)* that in some circumstances informa-

tion as to falsity in the possession of one department of defendant not brought to the attention of the department responsible for publication may not avail plaintiff "since the state of mind required for actual malice would have to be brought home to the persons in the [publisher's] organization having responsibility for the publication". What if any bearing this has on the present case must we think also await further exploration of the facts.

It follows that defendant publisher's motion for summary judgment was properly denied.

With respect to the authors, Jack Newfield and Paul Du Brul, however, the situation is somewhat different. There is no claim that the original hardbook publication was made with "actual malice," i.e., that as to that publication there was "malice at the time of the publication" *(New York Times Co. v Sullivan,* 376 US *supra,* at p 286). The present lawsuit is based on the publication of the paperback edition. The authors had nothing to do with the decision to issue the paperback edition and they had no control over it.

Furthermore, they had acquiesced in the publisher's suggestion that future printings should delete the part about plaintiff's going to police stations.

█ We thus think that the republication of the offending statement in the paperback edition was not a publication by the authors, for purposes of determining their liability under *New York Times v Sullivan (supra).* Accordingly, the motion of the authors for summary judgment should have been granted.

The order of the Supreme Court, New York County (KASSAL, J.), entered June 29, 1979, denying defendants' motion for summary judgment dismissing the complaint, and granting plaintiff's cross motion to dismiss defendants' affirmative defense of Statute of Limitations, should be modified, on the law, to the extent of granting the motion of defendants Newfield and Du Brul for summary judgment dismissing the complaint as against them, and the order should otherwise be affirmed, without costs.

KUPFERMAN, J. P., SULLIVAN, LUPIANO and BLOOM, JJ., concur.

Order, Supreme Court, New York County, entered on June 29, 1979, modified, on the law, to the extent of granting the motion of defendants Newfield and Du Brul for summary

judgment dismissing the complaint as against them, and the order is otherwise affirmed, without costs and without disbursements.