Vici **VELAIRE**, Plaintiff,

v.

The **CITY OF SCHENECTADY, NEW YORK; Ellis Hospital; Officer Michael Goldman; Officer Michael Hamilton; Sonya Infield; Terry Logan; Ann Mustone and Fred Urban, Defendants.**

No. 1:93–CV–0031.

United States District Court,
N.D. New York.

Sept. 30, 1994.

Oliver & Oliver Law Firm (Lewis B. Oliver, Jr., of counsel), Albany, NY, for plaintiff.

City of Schenectady Corp. Counsel (Michael R. Cuevas, of counsel), Schenectady, NY, for defendants, City of Schenectady, Goldman and Hamilton.

Thorn & Gershon Law Firm (Mario D. Cometti, of counsel), Albany, NY, for defen-

dants, Ellis Hosp., Infield, Logan, Mustone and Urban.

## AMENDED MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

The plaintiff in the instant 42 U.S.C. § 1983 action brings suit against the named defendants alleging violations of certain rights under the constitution, as well as various state causes of action. Presently before the court are defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56(b). Judgment is hereby granted for the defendants.

## I. BACKGROUND

On October 16, 1991, the plaintiff Vici Velaire was visiting her mother, a patient at defendant Ellis Hospital in Schenectady New York. Responding to noises from a disturbance within the hospital room, defendant Terry Logan, a nursing assistant, entered the room and claims to have found plaintiff with her hand around the neck of her red-faced and choking mother. Joined by defendants Margaret Anne Mustone, a nurse, and Sondra Infield, a nursing supervisor, and after a disputed conversation with plaintiff, defendants summoned hospital security, which responded in the person of defendant Fred Urban, the hospital's lead security officer, and another security officer, (not a defendant in this action). While it is disputed whether Urban and the other guard ordered plaintiff to remain in the room or to leave the hospital, it is undisputed that the Schenectady Police were summoned soon thereafter.

Defendants Schenectady police officers Michael Goldman and Michael Hamilton responded to the hospital and Logan informed them of what she had observed. The officers then entered the hospital room and observed red marks on the neck of plaintiff's 91 year-old mother. While it is disputed whether plaintiff was informed of her arrest and handcuffed while in the room, or when she attempted to walk away from the officers as they led her from the building, it is undisputed that plaintiff was arrested at the hospital, detained overnight at the Schenectady police

station and arraigned the next day on charges of third-degree assault and released on bail. Those charges were dismissed against the plaintiff in January of 1992.

Based on the above described incidents plaintiff alleges a cause of action under 42 U.S.C. § 1983 and the United States Constitution, as well as state law claims of illegal arrest, false imprisonment, negligence, malicious prosecution and intentional infliction of emotional distress. She seeks compensatory and punitive damages for these alleged violations of her rights under the Federal Constitution and her state law claims.

## II. DISCUSSION:

All defendants have moved for summary judgment. Summary judgment is only appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). There must be more than a "metaphysical doubt as to the material facts." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) *quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). All ambiguities must be weighed in favor of the non-moving party, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989), and "only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Plaintiff's cause of action under 42 U.S.C. § 1983 requires that she prove two elements against each defendant: (1) that some person has violated the plaintiff's protected rights under the U.S. Constitution or federal law; and, (2) that the person who allegedly violated such rights acted under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Plaintiff's § 1983 cause of action fails under both prongs. Since defendant raises no material issues of fact as to the absence of state action on the part of defendants Ellis Hospital,

Infield, Logan, Mustone and Urban, (hereinafter the "Ellis Hospital defendants") and since plaintiff has insufficiently disputed those facts which fairly support the claims of qualified immunity of Defendants Goldman and Hamilton (and hence defendant City of Schenectady) summary judgment is granted to the defendants.

## A. The Ellis Hospital Defendants:

██ For plaintiff to maintain a claim under § 1983, she must show that the defendants were state actors or acting under color of state authority. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Ellis Hospital is a private, non-profit hospital and plaintiff makes no argument that either the hospital, or the individual Ellis Hospital defendants, are state actors independent of the actions of the Schenectady defendants. Nor would the facts here support such an argument. *See Schlein v. Milford Hospital Inc.,* 561 F.2d 427 (2d Cir.1977) (private State-regulated hospital cannot be sued under § 1983, absent sufficient nexus between the State and the challenged action of the regulated hospital).

In her complaint, plaintiff alleged that there existed a conspiracy between the Schenectady state actors and the Ellis Hospital defendants, in connection with the conduct complained of, such that the concededly private Ellis Hospital actors could be said to have acted under color of state law within the meaning of § 1983. *See Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980). Plaintiff, however, does not address defendant's arguments on motion that she has failed to put forth any factual basis whatsoever in support of a conspiracy theory.

Rather, plaintiff has tempered her allegations and now relies on a theory that the Ellis Hospital Defendant acted "pursuant to a custom or understanding between Ellis Hospital and the Schenectady Police Department" (Pltf.Memo. in Opp. at 9) and so acted under color of state law. Plaintiff relies on *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) for the proposition that an agreement or understanding in which the police and a private

party cooperate to violate a person's constitutional rights will serve as a basis for finding that the private actor's conduct was under color of state law. Here, plaintiff claims that her proof shows that "Ellis Hospital had an understanding with the Schenectady Police Department where hospital employees could have persons seized and 'escorted' from the hospital regardless of whether or not probable cause existed for their arrest." (Pltf.Memo in Opp. at 11).

For evidence of this proposition, adduced in the face of the denials of such an understanding or agreement by every defendant, plaintiff points to isolated portions of the depositions of various Ellis Hospital defendants. This court finds that reading these deposition statements in a light most favorable to the plaintiff, no reasonable person could find that they assert the existence of an arrangement or understanding between these defendants to violate the rights of plaintiff or anyone else.

For example, plaintiff cites the following excerpt from defendant Infield's deposition:

Q. When you told Mr. Urban to call the police, was it your understanding that the Schenectady Police Department would provide escort services for Ellis Hospital?

A. Yes.

Q. And why did you have that understanding?

A. That's happened before.

Q. And how does that work?

A. If we have an unruly visitor in the hospital that cannot be reprimanded by our resources, and our resources are very limited with the security officers, they are not around or anything, and we feel we need stronger help to get the job done, we have always, as far as I can remember, been able to call the Schenectady police for assistance.

(Pltf.Memo. in Opp. at 4) (*quoting* Infield EBT at pp. 24–25).

Even drawing all inferences in favor of the non-moving party, as this court must do on a motion for summary judgment, this statement, and others like it which plaintiff points

to, indicate only that when hospital staff encountered disturbances they felt ill-equipped to handle, they called on the Schenectady Police: they do not give rise to an inference that the defendants had entered into an agreement or a *shared* understanding with the Schenectady Police that the Police Department would act unlawfully or in violation of anyone's rights. *See Cunningham v. Southlake Center for Mental Health, Inc.,* 924 F.2d 106, 108 (7th Cir.1991) (private actor cannot unilaterally convert state actor's legitimate activity into an illegal act). Nor do they indicate that the Schenectady Police would act at the unilateral direction of the hospital, without probable cause or independent investigation. *See Rizzo v. Host Services of New York, Inc.,* 545 F.Supp. 1193, 1195 (E.D.N.Y.1982) ("The mere response of a police officer to a citizen's call for assistance is not enough to transmogrify the citizen's action into that of the state. To satisfy the state action requirement plaintiffs would, as a minimum, have to prove that the police were knowingly involved in a plan to deprive plaintiffs of their rights").

As clarified in later cases, the rule of *Adickes* requires more than the unilateral understanding that a person can call upon the police and the police will respond and render assistance. In *Gramenos v. Jewel Companies Inc.,* 797 F.2d 432 (7th Cir.1986), *cert den'd,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987), the Seventh Circuit held that "a private party comes within § 1983 only when 'he is a willful participant in joint action with the State or its agents.' ... Although private parties call on the aid of State law 'without the grounds to do so', when the private decision may in no way be attributed to a 'state rule or a state decision' the private parties are not state actors. There must be a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal." *Id.* at 435 (*citations omitted*); *see also Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336 (7th Cir.1985) (granting summary judgment to defendants in § 1983 action where evidence was insufficient to show customary plan between private actor and sheriff department to "arrest persons at

beckon" of private actor. *id.* at 1352–53). While the defendants here point to the absence of evidence of such a joint course of action beyond plaintiff's bare allegations, plaintiff has produced no evidence to rebut defendant's motion or to justify such a conclusion here.

Plaintiff seizes on the understanding of some of the Ellis Hospital defendants that the police would escort unruly visitors from the hospital, as if the escorts themselves indicate police activity without probable cause. But in fact, nothing in the record indicates impropriety surrounding prior police responses: issues such as whether the visitors left voluntarily upon the police's arrival, whether probable cause existed to believe a visitor had caused a disturbance, or indeed whether any prior unruly visitors had been arrested for their conduct can only be speculated upon. Plaintiff has produced no evidence that *any* prior police response to the hospital resulted in a violation of any person's constitutional rights. Plaintiff merely points to the fact that the police had responded to calls for help by the hospital in the past, and that the hospital relied on the police to assist them when disturbances occurred, and alleges an agreement between the defendants to violate the rights of hospital visitors at large. Such conclusory allegations and naked assertions are insufficient to show joint or conspiratorial action between a state actor and a private defendant. *See Doe v. Smith,* 704 F.Supp. 1177, 1189 (S.D.N.Y. 1988); *See generally Dahlberg v. Becker,* 748 F.2d 85, 92–93 (2d Cir.1984) *cert. den.* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

Indeed, plaintiff quotes defendant Urban as to what Urban told the switchboard when he asked them to call the police on the night in question: "That we had a problem on B3 and to call the police, *that we wanted a visitor escorted from the premises.*" (Pltf. Memo. in Opp. at 4) (*quoting* Urban EBT at pp. 23–24). Plaintiff neglects however, to cite further along in Urban's deposition:

Q. So you are not aware in each case where someone was escorted off the premises, what ultimately happens to them in regard to their relationship to the police department, are you?

A. No, I am not aware of it.

Q. So you don't know whether some of them are arrested and some of them are not?

A. Right.

(Urban EBT at 24)

*Gramenos* teaches that under the rule of *Adickes,* shopkeepers are engaged in "state action" when they strike a deal with the police under which the police simply carry out the shopkeepers directions: if the police promise to arrest anyone the shopkeeper designates, then the shopkeeper is exercising the state's function. Where, however, the shopkeeper and the police both exercise independent judgment, no inference of a conspiracy for § 1983 purposes will arise. *Gramenos,* 797 F.2d at 435–36.

In short, plaintiff's fragments of depositions are insufficient to raise a material question of fact as to the existence of an agreement between the Ellis Hospital Defendants and the City of Schenectady Defendants. This is particularly true where in actual point, each deponent has actually denied the existence of, or knowledge regarding the existence of, such an agreement or mutual understanding. *Johnson v. Heinemann Candy Co.,* 402 F.Supp. 714 (E.D.Wis.1975), which plaintiff relies on, is readily distinguished in that the plaintiff there had produced direct evidence that the private actor-defendant in question had reached an *express* agreement with the Milwaukee City Attorney and Police Department for enforcement of his clearly discriminatory policy. It is precisely the absence of proof of either an agreement or understanding, or, evidence of an unconstitutional joint goal, upon which this plaintiff's case founders. Plaintiff has produced no evidence, even with all inferences from the material she has pointed to drawn in her favor, that "hospital employees could have persons seized and 'escorted' from the hospital regardless of whether or not probable cause existed for their arrest" (Pltf.Memo in Opp. at 11). Since plaintiff's § 1983 claims that the Ellis Hospital defendants acted under color of state law are expressly predicated on the existence of such an agreement or

understanding, in the absence of such proof, the summary judgment motion of defendants Ellis Hospital, Infield, Logan, Mustone and Urban is granted and plaintiffs § 1983 claim is dismissed as against them.

## B. Defendant Schenectady Police Officers Goldman and Hamilton:

■ Defendants Goldman and Hamilton, both police officers with the Schenectady, New York Police Department, have invoked the affirmative defense of qualified immunity and so their claim of qualified immunity may be examined by this court. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Yet, even if the rights in question are clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991). at 925; *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir.1990). For the actions of a government employee not to be covered by qualified immunity "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Here plaintiff's complaint alleges violation of numerous constitutional rights, most colorably her clearly established right under the Fourth Amendment to be free from unreasonable seizure. The court finds that her claim is best analyzed under the Fourth Amendment's reasonableness standard. Although an arrest is a deprivation of liberty and could therefore in principle be challenged under the Fourteenth Amendment, the Fourth Amendment is a more specific regulation of arrests and seizures and is the more appropriate vehicle to present such claims under § 1983. *See, Patton v. Przybylski*, 822 F.2d 697, 699 (7th Cir.1987); *cf.* *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that claims of excessive force in the course of arrests and other seizures are properly analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under the substantive due process standard).

■ In determining whether qualified immunity is proper in a particular case, the factual allegations must be examined in order to determine whether it was "objectively reasonable" for the defendants to believe that they were not violating the plaintiff's established constitutional rights. *Kaminsky* at 925. In light of the foregoing conclusion that no showing has been made of an agreement between the hospital and the responding police officer's to violate plaintiff's rights, and defendant Goldman's uncontradicted assertion that "the decision to arrest the plaintiff was ... solely my decision and was based on all the facts and circumstances that existed at that time," (Goldman Aff. ¶ 15) the court bases its determination of qualified immunity on only those undisputed facts constituting the circumstances surrounding the arrest. After a searching examination of the affidavits, depositions and memoranda of law of both parties, and considering only the essentially undisputed material facts in a light most favorable to the plaintiff, this court concludes that the facts in this case show that it was objectively reasonable and rational for these police officers to believe that their arrest of plaintiff was based on probable cause and thus they enjoy qualified immunity from plaintiff's § 1983 claims.

Upon their arrival at the hospital, it is undisputed that Goldman spoke with the distraught defendant Logan, who outlined what she claimed to have seen upon entering the room in response to the disturbance she heard within. Defendant Goldman states in his deposition that "upon my arrival to the third floor of the hospital I was told that a woman, later identified as the plaintiff herein, was observed grabbing her elderly mother by the neck and choking her. The individual who spoke to me was very upset and concerned for the patient's safety and advised me that she believed that the patient was in danger." (Goldman Aff. ¶ 10). Plain-

tiff attempts to dispute Goldman's version by pointing to the deposition testimony of defendant Logan who in recounting the *substance* of her conversation with Goldman stated "I told him when I entered the room I found [plaintiff's] left hand around her [mother's] neck. The patient was choking and she was trying to put more food into her mouth." (Logan EBT at p. 39). To the extent that these versions vary, such variances have no effect on that which the court views as undisputed: that upon entering the hospital ward, defendant Goldman was presented with information which amounted to a report from a credible witness indicating that plaintiff had been found with her hand around her mother's throat as her mother was choking.

Also undisputed is the presence of red marks on the alleged victim's throat. Observation of these marks is reflected in the affidavits or depositions of defendants Goldman, Hamilton, Mustone and Lancione, and the marks are documented in plaintiff's mother's medical records, prepared by defendant Mustone upon observation of her patient in the normal course of her nursing duties. Plaintiff's counsel raises no issue of fact as to the existence of these red marks,[1] but rather, disputes the sufficiency of these marks as probable cause to arrest. Plaintiff's counsel cites a large number of New York cases exploring the level of injury required to support a *conviction* for assault in the 3rd degree: none of plaintiff's many cases, however, address the far different and considerably less clearly defined inquiry into probable cause.

 Likewise, the ultimate dismissal of the complaint filed against the plaintiff because of its facial insufficiency does not, as plaintiff asserts, establish the absence of probable cause. "The evidence necessary to establish probable cause to justify an arrest need not be sufficient to warrant a conviction." *Veras v. Truth Verification Corp.*, 87 A.D.2d 381, 451 N.Y.S.2d 761, 765 (1st Dep't.

1982). Furthermore, a police officer's judgment as to probable cause, unlike a criminal complaint, may be based on hearsay evidence, upon suspicious circumstances and upon probabilities. *Id.*

Whether it was objectively reasonable for defendants Goldman and Hamilton to believe that they were not violating plaintiff's rights turns on whether a reasonable officer could have believed that probable cause existed for plaintiff's arrest. *See Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534,. 116 L.Ed.2d 589 (1991). Defendant's estimation of probable cause must be assessed in light of the totality of the circumstances in order for the court to determine whether it was reasonable for Goldman and Hamilton to believe that they had reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense had been committed by the person to be arrested. *See Calamia v. New York*, 879 F.2d 1025 (2d Cir.1989).

Here, it is undisputed that the officers were dispatched to the hospital as a result of a disturbance thereat and that upon arrival they were met by the visibly upset defendant Logan, whose credibility they had no reason to doubt and upon whose account of events they were entitled to rely. *See People v. Nichols*, 156 A.D.2d 129, 548 N.Y.S.2d 175 (1st Dept.1989); *cf Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir.1986) ("We hesitate to conclude that 195 years after the fourth amendment was added to the Constitution there must be a jury trial every time the police arrest a person accused by a store guard who says he saw the person shoplifting, a trial in which the jury will decide whether the police used the right investigative techniques"). Indeed the police could reasonably believe that they could especially rely on the eyewitness account of a nurse's assistant regarding occurrences involving a patient whose care had been entrusted to that witness. It is equally undis-

---

**1.** While plaintiff's affidavit asserts that "there were no red marks on my mother's neck, and the police officers never asked me for my side of the story," (Velaire Aff. ¶ 23), plaintiff nowhere indicates that she either looked for marks or was in a position to observe such marks. Plaintiff's attorney nowhere directs the court to this statement

as evidence that there were no marks and, in the face of the strong countervailing evidence, counsel raises no argument as to the existence of the marks, only as to the marks' sufficiency as probable cause. Plaintiff's unsupported and offhand allegation insufficiently raises a question of fact as to the red marks existence.

puted that during her conversation with Goldman, Logan indicated that upon entering the room in response to noises within she found the plaintiff with her hand around the patient's neck, that the patient was choking, and that Logan expressed her fear for the patient's safety. Furthermore, upon entering the room, the officer's observed red marks upon the patient's neck. Goldman's affidavit described these marks, which apparently resulted from the incident described to them, as marks "which appeared to be injuries caused by someone grabbing and choking her." (Goldman Aff. ¶ 13).

Based on this information and under these circumstances, it was "objectively reasonable" for defendants Goldman and Hamilton to believe their arrest of plaintiff did not violate plaintiff's rights. Particularly in light of the fact that the chaotic events described above occurred in a hospital, where repose and quietude are essential to the welfare of other patients and therefore there must have been some urgency in resolving the situation, this court cannot say that it was objectively unreasonable for these officers to believe that their arrest of plaintiff was supported by probable cause, and thus that their actions did not violate plaintiff's rights. It follows from this conclusion that these officers should be granted qualified immunity for their actions. Thus their motion for summary judgment on plaintiff's § 1983 claim is hereby granted.

## C. Defendant City of Schenectady

 For a valid claim of municipal liability under § 1983 the municipality itself must be the wrongdoer rather than one of its employees because § 1983 liability cannot be based on a respondeat superior theory. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978). Furthermore, a valid claim of municipal liability under § 1983 must be based on official municipal policy or *custom pursuant to which a constitutional*

violation was committed. *Monell* at 689, 98 S.Ct. at 2035–36.

 As discussed above, no evidence has been adduced to show the existence of any custom, agreement, or understanding between the City of Schenectady and any defendant, to violate the rights of plaintiff or any other individual. Furthermore, even had such an understanding, agreement or custom been shown, this court's finding that defendants Goldman and Hamilton acted under the reasonable belief that probable cause for arrest existed, establishes that plaintiff's arrest did not flow from such a custom, understanding, or agreement to violate her rights. As such no policy, custom or understanding of the City of Schenectady can be said to have caused any injury to the plaintiff. Finally, the court's finding that Goldman and Hamilton acted reasonably under the Fourth Amendment and thus enjoyed qualified immunity establishes that no constitutional violation has occurred: there can be no municipal liability where no constitutional violation has occurred. *See Dodd v. City of Norwich,* 827 F.2d 1 (2d Cir.1987); *Doe v. Smith,* 704 F.Supp. 1177, 1187 (S.D.N.Y.1988). Accordingly, defendant City of Schenectady's motion for summary judgment is hereby granted and plaintiff's § 1983 claim against the City of Schenectady is hereby dismissed.

 Finally, the court notes that plaintiff makes no argument on this motion defending her allegations that excessive force was used in the course of her arrest or that the conditions of her confinement violated her constitutional rights, notwithstanding that allegations of such are scattered throughout her sprawling complaint. The court further notes that based on her own testimony at a hearing held pursuant to New York State General Municipal Law § 50–h on September 3, 1992, any such claims would be unsupportable. Plaintiff testified that aside from a bruise she claims she received while being handcuffed,[2] she was not struck, physi-

2. In her affidavit plaintiff merely states that officer Goldman "grabbed her by the arm" (Velaire Aff. ¶ 24) with no allegation that the grabbing of her arm constituted excessive force or explanation as to why she such contact with her arm during handcuffing could be considered exces-

sive. Complaints based on civil rights statutes must include specific allegations of facts showing a violation of rights "instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

cally abused, or caused physical pain by defendants Hamilton or Goldman in any way. Plaintiff goes on to state that she never sought any medical treatment for the alleged bruise on her arm and on motion points to no evidence in support of her claim.

While plaintiff's complaint recited that she was denied a phone call upon her arrest, her 50-h testimony states that the Schenectady police matron made a call to plaintiff's friend at plaintiff's request, to ensure that plaintiff's household animals were taken care of. Finally, while plaintiff claims that her legs swelled up because of water retention during her night in confinement, she further testified that this condition caused her no pain and that she was able to walk unattended the next day. Plaintiff never sought medical treatment for the alleged swelling and makes no claim that the swelling resulted from the acts of the Schenectady Police Department or its agents. Finally, the affidavit of Joann Monte, the matron for the Schenectady Police Department, indicates that she observed no physical injuries or problems with the plaintiff.

In short, plaintiff sufficiently supports none of her complaint's broad and generic allegations of excessive force by the Schenectady Police Department defendants. *See Barr*, 810 F.2d at 363. Nor does she offer evidence that would allow a reasonable factfinder to conclude that she had a serious medical need and that the defendants were deliberately indifferent to that need. *cf. Clemmons v. Bohannon*, 956 F.2d 1523, 1526 (10th Cir.1992) (in banc). Indeed plaintiff's own later testimony that she suffered no pain and sought no medical care actually tends to refute her allegation of serious medical need. Furthermore, in light of plaintiff's attorney's failure on this motion to respond to defendants' arguments to the contrary or to point to any evidence in support of the allegations scattered throughout her complaint, plaintiff has offered no evidence which could support claims of either an unreasonable use of force or a violation of her due process rights during her confinement. This court finds no evidence to support plaintiff's allegations that the Schenectady Police Department or its agents acted unreasonably during her arrest,

see *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Cooper v. City of Virginia Beach*, 817 F.Supp. 1310 (E.D.Va.1993), or that the conditions of her confinement violated her due process rights under the Fourteenth Amendment, *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Hudson v. McMillian*, —— U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *See also Salazar v. Chicago*, 940 F.2d 233, 237–40 (7th Cir.1991) (due process violated only by deliberate indifference to detainees serious medical needs). Consequently, since plaintiff has failed to raise any genuine issue of material fact as to these claims, *cf. Davidson v. Flynn*, 32 F.3d 27, 31 (2nd Cir.1994) to the extent that plaintiff's complaint may be read to state such claims, summary judgment is granted in favor of defendants Goldman, Hamilton and the City of Schenectady.

### III. CONCLUSION

In sum, the plaintiff has failed to maintain her claim for relief under 42 U.S.C. § 1983 against defendants Ellis Hospital, Infield, Logan, Mustone and Urban and so their motion for summary judgment is granted and plaintiff's § 1983 claim is dismissed against them. Plaintiff's pendent state law claims against these defendants are dismissed for lack of subject matter jurisdiction, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and she is left to her state court tort remedies. For the foregoing reasons, defendant's City of Schenectady, Hamilton and Goldman are granted summary judgment as to plaintiff's § 1983 claims and her pendent state law claims are likewise dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**