Dan J. CROY, Plaintiff,

v.

A.O. FOX MEMORIAL HOSPITAL, Arnold Bucove, M.D., John Remillard, and David G. Evelyn, Defendants.

Dan J. Croy, plaintiff,

v.

A.O. Fox Memorial Hospital, Defendant.

Nos. 97–CV–1836, 98–CV–1847.

United States District Court, N.D. New York.

May 28, 1999.

---

138

Jacobs, Jacobs Law Firm, Stamford NY, Michael A. Jacobs, of counsel, for plaintiff.

Thuillez, Ford Law Firm, Albany NY, Donald P. Ford, of counsel, for defendants A.O. Fox Memorial Hosp., John Remillard, and David Evelyn.

O'Connor, O'Connor Law Firm, Albany NY, Justin O. Corcoran, of counsel, for defendant Bucove.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Dan Croy ("plaintiff") commenced the instant lawsuits against defendants asserting: (1) common law claims for defamation and negligent misrepresentation (97–CV–1836); and (2) a claim pursuant to 42 U.S.C. § 1983 for the alleged deprivation of his liberty and property interests as guaranteed by the Fourteenth Amendment to the United States Constitution (98–CV–1847). Presently before the Court are defendants' motions to dismiss the Complaints pursuant to FED.R.CIV.P. 12(b)(6) and/or 12(c) or, in the alternative, for summary judgment pursuant to FED. R.CIV.P. 56.

## I. BACKGROUND

Plaintiff is a licensed psychiatrist in the State of New York. In May 1993, plaintiff entered into a contract with Defendant A.O. Fox Memorial Hospital (the "Hospital"). Certain persons within the Hospital became concerned with plaintiff's treatment of two patients in October 1993. Defendant Arnold Bucove, M.D. ("Bucove") and another hospital administrator met with plaintiff regarding his care and treatment of these two patients. As a result of the meeting, plaintiff and the Hospital negotiated an agreement whereby plaintiff left the Hospital in exchange for payment of a certain sum of money. Accordingly, the parties entered into a Memorandum of Understanding terminating the employment contract effective November 5, 1993.

On November 23, 1993, Bucove drafted a memorandum to the Executive Committee of the Medical Staff ("ECMS") regarding the incidents involving plaintiff. The memorandum summarized plaintiff's treatment of the two patients and also stated that plaintiff "manifested grandiosity,

paranoia and mood swings." The memorandum also noted that plaintiff often smoked in his office contrary to Hospital policy. Bucove continued to write that plaintiff failed to make notes of his interactions with patients, "felt free to override carefully thought out treatment plans made by other professionals and favor his own treatment plan after a brief contact with patients [and] often found reason not to return patients to referring physicians or . . . agencies as he thought his own treatment abilities were far more superior to the referring sources." Finally, Bucove noted that "[w]hen [plaintiff] learned that there would be an investigation into the 2 incidents . . . he perceived the investigation as others were 'out to get him.' " The memorandum also noted that Bucove had reported plaintiff to the New York State Department of Health Office of Professional Medical Conduct ("OPMC") as an impaired physician.

OPMC conducted an investigation which included a review of the two patients' medical records and having plaintiff undergo a psychiatric evaluation. OPMC discontinued the investigation and closed the case without taking any disciplinary action.

In July 1997, plaintiff applied for a license to practice medicine in the State of Alaska. Question number eighteen of the application asked:

> Have you ever been the subject of an inquiry or under investigation by any state board or other licensing agency concerning a violation or alleged violation of any state regulation, statute, or law, for any violation or alleged violation of the medical practice act, or unprofessional or unethical conduct, or for sexual misconduct?

Plaintiff responded in the negative. As part of its investigation, the Alaska State Medical Board ("ASMB") contacted the Hospital regarding plaintiff's application. In response to the ASMB's inquiry, Defendant David Evelyn ("Evelyn"), who was vice-president of medical affairs for the Hospital, reviewed plaintiff's file, including the memorandum drafted by Bucove, and drafted a letter reading as follows:

> Dr. Daniel Croy was employed as a *locum tenens* psychiatrist at our facility from May 1993 until his resignation in October 1993. This reference is based upon my review of his credentials file. On at least two occasions Dr. Croy was found to have not followed acceptable standards of care, causing significant harm to at least one patient. When confronted with these incidents, he stated that his qualifications allowed him to deviate from the acceptable standards of care. He was also noted to exhibit mood swings, signs of paranoia and manifested grandiosity. Because of these behaviors he was reported to the NYS Dept. of Health as an impaired physician. Based upon my review, I would not recommend him.

On October 6, 1997, the ASMB sent a letter to plaintiff stating that his application to practice medicine had been denied. The reason for the denial was plaintiff's failure to truthfully respond to question number eighteen on the application. The letter stated that:

> Alaska Statute 08.64.240(b) gives the board the authority to refuse to grant a license . . . if it finds that a licensee "has secured a license through deceit, fraud, or intentional misrepresentation."

> You responded "NO" to question 18 on the application for licensure. . . . Contrary to that response, information came to the board's attention that a complaint had been filed against you by a hospital in New York and that the state of New York had indeed conducted an investigation into the complaint. . . .

> Therefore, following its review of information gathered and after meeting with you, the board denied you application based on its determination that your response to question 18 on the application was false.

Plaintiff appealed this adverse decision and a settlement was reached with Alaska

whereby he would obtain his license after paying a $1,000 fine.

Thereafter, plaintiff also applied for a license to practice medicine in the State of Kentucky ("Kentucky"). The Kentucky State Medical Board ("KSMB") requested information regarding plaintiff from the Hospital. In February 1999, the Hospital responded to the KSMB.

Plaintiff commenced the instant litigation claiming that defendants' response to the ASMB (*i.e.*, the August 25, 1997 letter from Evelyn) was defamatory and constituted negligent misrepresentation. Plaintiff commenced a second lawsuit claiming that the Hospital's failure to timely provide the KSMB with the requested information, and the Hospital's having submitted defamatory information to the ASMB, deprived him of his constitutional rights. Defendants now move to dismiss the Complaints pursuant to FED.R.CIV.P. 12 or, in the alternative, for summary judgment pursuant to FED.R.CIV.P. 56.[1]

## II. DISCUSSION

### A. Consolidation

■ Pursuant to FED.R.CIV.P. 42, the Court may, *sua sponte*, order the consolidation of actions involving a common question of law or fact. *See Devlin v. Transportation Communications Intern'l Union*, 175 F.3d 121, 129 (2d Cir.1999). The Second Circuit has instructed that the "Rule should be prudently employed as a valuable and important tool of judicial administration invoked to expedite trial and eliminate unnecessary repetition and confusion." *Id.* (internal quotations and citations omitted). The decision whether to consolidate entails considerations of both equity and judicial economy. *See id.*

■ Because the two actions currently pending before the Court involve common issues of law and fact, arise out of the same transactions, and there is no reason to belief that justice would be sacrificed by

consolidating these actions, the Court hereby consolidates actions 97–CV–1836 and 98–CV–1847 for purposes of this motion.

### B. Whether the Instant Motions Will be Treated as Motions Pursuant to Rule 12 or Rule 56

Because the parties were on notice of a potential conversion to summary judgment pursuant to FED.R.CIV. 56, see Defendants' Notices of Motion (noticing motions pursuant to Rule 12 and/or Rule 56); Mar. 10, 1999 Jacobs Aff., at ¶ 3 ("I submit this affidavit in opposition to the Motion for Summary Judgment"); defendants' and plaintiff's Rule 7.1(a)(3) statements, the parties have had ample time to submit, and have submitted, supporting affidavits and evidence, and the Court has decided to consider materials outside the pleadings, the present motions will be treated as motions for summary judgment. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999); *Morelli v. Cedel*, 141 F.3d 39, 45 (2d Cir.1998).

### C. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, judgment may be entered in favor of the moving party if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all facts must be construed in favor of the nonmoving party. *Id.; Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995). Where the moving party has supported the motion by affidavits and/or documentary evidence, the non-movant "may not rest upon mere allegations or denials of the adverse party's

1. The parties entered into a stipulation discontinuing the action against John Remillard and, accordingly, the Complaint against him is dismissed.

pleading, but the adverse party's response, by affidavits or as otherwise provided in [ ] rule [56], must set forth specific facts showing that there is a genuine issue [of material fact] for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be ·entered against the adverse party." FED.R.CIV.P. 56(e); *see BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996). With this standard in mind, the Court will now address the motions for summary judgment.

### D. Section 1983 Claim

 In his first action, plaintiff claims that he has a property interest in his New York license to practice medicine, he acquired a liberty interest in pursuing his lawful avocation, he applied for a license to practice medicine in Kentucky and Alaska, that the KSMB requested information regarding plaintiff from the Hospital, that the Hospital has failed or refused to timely supply the requested information to the KSMB, and that the Hospital submitted defamatory information to the ASMB. According to plaintiff, the ·Hospital's failure to timely provide the requested information to the KSMB, and the Hospital's submission of defamatory information to the ASMB, deprived plaintiff of his liberty and property interests without due process of law. The Hospital moves to dismiss claiming that there was no state action.

 "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [his] federal statutory rights, or [his] constitutional rights or privileges." *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998) (citing *Eagleston v. Guido,* 41 F.3d 865, 872 (2d Cir.1994), *cert. denied,* 516 U.S. 808, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995)). The issue before the Court focuses on the first prong of a § 1983 claim—the requirement of state action.

Plaintiff claims that the Hospital acted under color of state law because: (1) "the Hospital ... maintains quality and peer review pursuant to the State Education Law and Health Law ... [and (2) ] the defendant claims that the libel by Dr. Evelyn, Dr. Bucove and the hospital were privileged pursuant to State Law." Pl.Mem. of Law, at 2. According to plaintiff, this demonstrates that the State of New York had sufficient involvement in the operations of the Hospital to constitute state action.

The Hospital responds by arguing that it is not performing a traditional state function reserved exclusively to the state, the Hospital is a private entity, and the State's regulation of the Hospital is insufficient to convert the Hospital's conduct to state action.

 It is well-settled that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). "The complaining party must also show that 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.' " *Id.*

 Here, the alleged failure to timely submit information to the KSMB and the sending of a letter of recommendation to the ASMB were the responsibilities of physicians and/or the Hospital's administrators, all of whom are private parties. *See Blum,* 102 S.Ct. at 2786. There is no indication that the Hospital's actions were influenced or compelled in any way by the State, or by State statutes or regulations.

The mere fact that [the State] regulates the facilities and standards of care of private hospitals does not per se make the acts of the hospital ... the acts of the state. Such a blanket rule ...

would overlook the essential point that ... the state action, not the private action, must be the subject of the complaint.

*Schlein v. Milford Hosp.*, 561 F.2d at 427, 428 (2d Cir.1977) (internal quotations and citations omitted).

Plaintiff has failed to demonstrate how the peer review process mandated by state law implicated the Hospital's alleged failure to timely provide the information to the KSMB or the Hospital's submission of information to the ASMB. New York's peer review process, see N.Y.PUB. HEALTH LAW §§ 2805–j – 2805–m; N.Y.EDUC.LAW § 6527, and the certain immunities provided by New York law for conduct undertaken in connection with the peer review process, see N.Y.EDUC.LAW § 6527(5), are insufficient to convert the Hospital's conduct in this matter into state action. *See Okunieff v. Rosenberg*, 996 F.Supp. 343, 349–357 (S.D.N.Y.1998), *aff'd*, 166 F.3d 507 (1999); *Wasserman v. Maimonides Med. Ctr.*, 970 F.Supp. 183, 191 (E.D.N.Y. 1997) (peer review process involved private actors and private hospital and did not involve state action); *Deckon v. Chidebere*, 1995 WL 555684, at * 3 (S.D.N.Y. Sept.19, 1995); *Estes v. Long Island Jewish Med. Ctr.*, 1995 WL 217545, at *1 (S.D.N.Y. Apr.12, 1995), *appeal dismissed*, 100 F.3d 941, 1996 WL 7183 (1996); *Velaire v. City of Schenectady*, 862 F.Supp. 774, 776 (N.D.N.Y.1994); *see also Yeager v. City of McGregor*, 980 F.2d 337, 342 (5th Cir.1993) (citing *Goss v. Memorial Hosp. Sys.*, 789 F.2d 353 (5th Cir.1986), *cert. denied*, 510 U.S. 821, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993)); *Ezpeleta v. Sisters of Mercy Health Corp.*, 800 F.2d 119, 122 (7th Cir.1986); *Crowder v. Conlan*, 740 F.2d 447 (6th Cir.1984). Moreover, the Hospital does not exercise powers traditionally the exclusive prerogative of the State. *See Blum*, 102 S.Ct. at 2786; *Schlein*, 561 F.2d at 429. Accordingly, because defendants did not act under color of state law, plaintiff's § 1983 claim must be dismissed.

## E. Defamation

Plaintiff also asserts a defamation claim against defendants arising out of the August 25, 1997 letter sent by Evelyn to Alaska. Plaintiff authorized the Hospital to respond to inquiries by Alaska about his tenure and whether there was any derogatory information on file. In order to respond to the ASMB's request, Evelyn reviewed plaintiff's credential file, which included the memorandum from Bucove. Evelyn did not discuss the request by Alaska with Bucove. Evelyn responded to Alaska by letter dated August 25, 1997 (which was reprinted in its entirety, see *supra* at 4). Much of the information in Evelyn's letter came from Bucove's memorandum. Plaintiff claims that this letter was libelous.

### 1. Bucove

Bucove moves to dismiss this cause of action claiming that: (1) it is barred by the applicable statute of limitations; (2) Bucove is entitled to qualified immunity; and (3) plaintiff is unable to demonstrate proximate cause.

Bucove claims that the libel action against him is time-barred because he drafted the memorandum in 1993 and he neither ratified nor approved Evelyn's 1997 republication of the material contained in the memorandum. Plaintiff responds that, "[a]lthough [he] has not, and cannot, demonstrate that Bucove was even aware that a request for information about plaintiff's employment at the [H]ospital had been solicited in a specific request, it is obvious that Bucove knew that any application by Plaintiff would reopen the memo." Pl.Mem. of Law, at 6. Plaintiff essentially argues that Bucove may be held accountable for any republication of the contents of the memorandum because he knew or should have known that the memorandum would be reviewed every time plaintiff applied for a job.

Under New York law, the original publisher of a defamatory statement is not automatically liable for subsequent republication of the statement by others. *See Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 540, 435 N.Y.S.2d 556, 416 N.E.2d 557 (1980); *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 435, 438 N.Y.S.2d 496, 420 N.E.2d 377 (1981); *Clark v. New York Tel. Co.*, 52 A.D.2d 1030, 384 N.Y.S.2d 562, 563 (4th Dep't 1976), *aff'd*, 41 N.Y.2d 1069, 396 N.Y.S.2d 177, 364 N.E.2d 841 (1977). The original author of a document may not be held personally liable for injuries arising from its subsequent republication absent a showing that the original author approved or participated in some other manner in the activities of the third-party republisher. *See id.*

Here, plaintiff's Complaint and supporting papers are entirely devoid of any allegations of Bucove's involvement in the republication of the information contained in his memorandum. In fact, plaintiff admits that he has not, and cannot, demonstrate that Bucove was even aware that there had been a request for information by the ASMB. *See* Pl.Mem. of Law, at 6. Whether Bucove may have known that someone reviewing plaintiff's credential file might later read the memorandum does not constitute republication by Bucove. *See Ferber v. Citicorp Mortgage, Inc.*, 1996 WL 46874, at * 4 (S.D.N.Y. Feb.6, 1996) ("[W]here a single impression or printing is used, there is only one publication, regardless of the number of copies [ ] or the number of people exposed to the libel.") (quoting *Rinaldi v. Viking Penguin, Inc.*, 101 Misc.2d 928, 933, 422 N.Y.S.2d 552, (N.Y.Sup. 1979)), *aff'd as modified*, 73 A.D.2d 43, 425 N.Y.S.2d 101 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 422, 438 N.Y.S.2d 496, 420 N.E.2d 377 (1981). Furthermore, whether Bucove knew, or should have known, that the memorandum might form the basis of a future letter of recommendation does not constitute the kind of participation necessary to hold Bucove liable for the republication. *See, e.g., Rinaldi*, 73 A.D.2d 43,

425 N.Y.S.2d 101 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 422, 435, 438 N.Y.S.2d 496, 420 N.E.2d 377 (1981). Because there is no evidence that Bucove ratified, approved, controlled, or otherwise participated in the republication of the information in his memorandum, he may not be held accountable for the publication of the August 1997 letter. *See Cerasani v. Sony Corp.*, 991 F.Supp. 343, 351 (S.D.N.Y.1998); *Davis v. Costa–Gavras*, 580 F.Supp. 1082, 1097 (S.D.N.Y.1984); *Rinaldi*, 52 N.Y.2d at 435, 438 N.Y.S.2d 496, 420 N.E.2d 377; *Karaduman*, 51 N.Y.2d at 540, 435 N.Y.S.2d 556, 416 N.E.2d 557. Accordingly, any defamation claims against Bucove must arise out his publication of the memorandum in 1993 and, therefore, are time-barred by the one year statute of limitations. *See* N.Y.C.P.L.R. § 215(3).

### 2. Evelyn

Evelyn also moves to dismiss the defamation action against him claiming that he is entitled to qualified immunity and that he did not act with malice.

Under New York law:

[A] communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation.

*Byam v. Collins*, 111 N.Y. 143, 150, 19 N.E. 75 (1888). In other words, "there exists a qualified privilege where the communication is made to persons who have some common interest in the subject matter." *Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 587, 665 N.E.2d 153 (1996) (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 437, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)). This qualified privilege applies to "statements about a physi-

cian's qualifications by and/or to hospital officials." *Farooq v. Coffey*, 206 A.D.2d 879, 616 N.Y.S.2d 112 (4th Dep't 1994) (citing *Shapiro v. Health Ins. Plan*, 7 N.Y.2d 56, 60–61, 194 N.Y.S.2d 509, 163 N.E.2d 333 (1959)). The "qualified privilege is inapplicable where the motivation for making such statements was spite or ill will (common law malice) or where statements were made with a high degree of awareness of their probable falsity (constitutional malice)." *Foster*, 87 N.Y.2d at 752, 642 N.Y.S.2d 583, 665 N.E.2d 153 (internal citations and quotations omitted).

Similarly, N.Y.Educ.Law § 6527(5) provides for qualified immunity for any:

> person, ... or other entity on account of the communication of information in the possession of such person or entity, or on account of any recommendation or evaluation, regarding the qualifications, fitness, or professional conduct or practices of a physician, to any governmental agency.... The foregoing shall not apply to information which is untrue and communicated with malicious intent.

*See Farooq*, 616 N.Y.S.2d at 112.

■ Because Evelyn acted within the scope of his duty as vice-president of medical affairs of the Hospital in sending the letter to the ASMB, plaintiff authorized defendants to respond to inquiries by the ASMB, and both he and Alaska had a common interest in the subject matter (*i.e.*, plaintiff's qualifications to practice medicine), Evelyn's communication is presumptively privileged pursuant to the common law qualified privilege. *See Shapiro*, 7 N.Y.2d 56, 194 N.Y.S.2d 509, 163 N.E.2d 333. Likewise, because Evelyn's communication to the ASMB (a governmental agency) concerned a recommendation or evaluation regarding plaintiff's qualifications, fitness, and professional conduct as a physician, Evelyn's communication is presumptively privileged pursuant to the statutory privilege contained in N.Y.Educ.Law § 6527(5). It is, thus, incumbent upon plaintiff to demonstrate that the communications were both untrue and made with

malicious intent. *See* N.Y.Educ.Law § 6527(5); *Farooq*, 616 N.Y.S.2d at 112.

■ Here, assuming the statements in the letter to be false, a point which defendants do not concede, plaintiff has failed to submit sufficient evidence that would enable a fair-minded jury to conclude that the statements in the letter were made with malicious intent. The evidence demonstrates that plaintiff never met or otherwise had any contact with Evelyn. *See* Croy Dep., at 83, 90–91. Plaintiff offers no evidence demonstrating, directly or circumstantially, that Evelyn sent the letter out of ill-will or spite.

■ Plaintiff argues, however, that "Evelyn made no investigation whatever as to the facts of Bucove's memorandum which is gross negligence and recklessness in and of itself." Pl.Mem. of Law, at 8. Of course, the proper standard is whether defendants had a high degree of awareness of probable falsity—a subjective standard. *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989); *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964); *Ives v. Guilford Mills, Inc.*, 3 F.Supp.2d 191, 200 (N.D.N.Y.1998); *Gostanian v. Bendel*, 1997 WL 214966, at * 10 (S.D.N.Y. Apr.25, 1997). Here, plaintiff has failed to proffer any evidence demonstrating that Evelyn believed the information in the Bucove memorandum to be false. "There is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action." *Liberman*, 80 N.Y.2d at 438, 590 N.Y.S.2d 857, 605 N.E.2d 344; *Foster*, 87 N.Y.2d at 752, 642 N.Y.S.2d 583, 665 N.E.2d 153. Plaintiff's allegation that Evelyn failed to undertake an investigation does not alter the result. "[F]ailure to investigate before publishing, even when a reasonably prudent person

would have done so, is not sufficient to establish reckless disregard." *Harte–Hanks*, 109 S.Ct. at 2696. Furthermore, plaintiff has not demonstrated that there were obvious reasons to doubt the veracity of the information in Bucove's memorandum. *See Harte–Hanks*, 109 S.Ct. at 2696. Because plaintiff has failed to submit sufficient evidence to permit a fair-minded jury to conclude that Evelyn acted with malice, plaintiff's defamation claims must be dismissed.

## F. Negligent Misrepresentation

■ Plaintiff's remaining claim is for negligent misrepresentation arising out of the Evelyn letter. Defendants move to dismiss claiming that plaintiff has failed to allege or proffer facts demonstrating a special relationship between he and the defendants.

Although this issue was not raised by any of the defendants, the qualified privilege provided for by N.Y.EDUC.LAW § 6527(5) extends to plaintiff's claim for negligent misrepresentation. That section provides that "[t]here shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any

person ... or entity ... on the account of the communication of information in the possession of such person or entity, or on account of any recommendation or evaluation [regarding a physician] ... to any governmental agency." This statute is not limited to defamation actions; rather, it precludes any cause of action for damages arising out of a recommendation to a governmental agency. *See Giannelli v. St. Vincent's Hosp. and Med. Ctr. of New York*, 160 A.D.2d 227, 232, 553 N.Y.S.2d 677 (1st Dep't 1990).

Plaintiff's negligence action arises out of the letter of recommendation sent by Evelyn to the ASMB and, therefore, falls within the protection of § 6527(5). As previously discussed, there is no evidence suggesting that Evelyn acted with malice and, therefore, neither he nor the Hospital may be held liable for monetary damages on this cause of action. *See id.*[2]

## III. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are GRANTED IN THEIR ENTIRETY and plaintiff's Complaints in case numbers 97–

---

**2.** Even without the qualified immunity of § 6527(5), plaintiff's negligent misrepresentation claim must, nevertheless, fail. The elements of a cause of action for negligent misrepresentation include: (1) carelessness in imparting words, (2) upon which others were expected to rely, (3) upon which they did act or failed to act, (4) to their damage, and (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound by some relation or duty of care. *See Patell Indus. Mach. Co. v. Toyoda Mach. USA, Inc.*, 880 F.Supp. 96, 99 (N.D.N.Y.1995); *White v. Guarente*, 43 N.Y.2d 356, 362, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977). In addition to these elements, a plaintiff must demonstrate a special relationship between the parties. *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996); *Alamo Contract Builders, Inc. v. CTF Hotel Co.*, 242 A.D.2d 643, 644, 663 N.Y.S.2d 42 (2d Dep't 1997).

First, there were no words imparted to plaintiff upon which he relied to his damage. *See Ackerman v. Price Waterhouse*, 252 A.D.2d 179, 683 N.Y.S.2d 179, 191 (1st Dep't 1998);

*Megally v. LaPorta*, 679 N.Y.S.2d 649, 654 (2d Dep't), *appeal dismissed*, 679 N.Y.S.2d 649 (1998). Rather, as noted, any alleged misrepresentations were made to the ASMB.

Second, "such information is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all." *White*, 43 N.Y.2d at 362, 401 N.Y.S.2d 474, 372 N.E.2d 315. Here, the letter and, thus, the alleged misrepresentations, were sent to Alaska. Defendants had no special relationship with, or duty to, Alaska. Alaska merely requested a letter of recommendation from defendants. This did not create the duty of care necessary to support a claim for negligent misrepresentation.

Third, there is no evidence that Alaska relied upon the statements in the letter. To the contrary, Alaska conducted its own independent investigation of plaintiff. Accordingly, plaintiff may not recover under this theory of liability.

CV–1836 and 98–CV–1847 are DIS-MISSED. The Court of the clerk is directed to close both cases.

**IT IS SO ORDERED**