OPINION OF THE COURT
Richard F. Braun, J.
These are three negligence actions for damages due to destruction of personal property, which have been consolidated for a joint trial before this court and a jury. Pursuant to CPLR 325 (d), they were removed to the Civil Court from the Supreme Court, New York County. Defendants move in limine to limit plaintiffs evidence as to damages. In deciding a previous appeal in these actions, the Appellate Term, First Department, affirmed an order denying a motion for summary judgment, and expressly left open the issue that is the subject of the instant motion. (Simeonov v Tiegs, NYU, Dec. 3, 1991, at 24, col 4.)
This court suggested that the attorneys for the parties reach a stipulation as to facts for the purpose of this court’s deciding the motion in limine. Plaintiffs attorney made an extensive proposal, to which defendants’ counsels would not agree. The attorneys allege certain facts in their memoranda of law. For this motion only, the court is using the factual allegations which were either coextensive or uncontested.
Plaintiff Mihail Simeonov is an internationally known sculptor. Defendant Cheryl Tiegs (Tiegs) is a leading model. Defendant 829 Park Avenue Corp. (829) was the landlord of the building in which defendant Tiegs resided in Manhattan. Defendant Albert B. Ashforth, Inc. (Ashforth) was the managing agent of the building.
In 1979, defendant Tiegs and her husband were trustees of a wildlife preservation organization, Cast the Sleeping Elephant Trust, one of whose goals was to have plaintiff make a sculpture of an elephant by tranquilizing the elephant and then making an impression of the sleeping elephant with alginate, a quick drying substance. Some people involved with the Trust proposal expressed the fear that the alginate process might harm the elephant. Defendant Tiegs was so confident that the process would not do so that she volunteered to have her face covered with the alginate in order to demonstrate that it was harmless. Defendant Tiegs posed for plaintiff in three sittings, during which time he applied alginate to her *56 face, throat and a small part of her chest. As she was not injured, the project was subsequently completed by using the alginate to make a casting of an elephant. The casting was to be installed at the United Nations building in Manhattan.
Over the course of the next two years, plaintiff modified the alginate impression of defendant Tiegs to make a plaster casting of her head in deep repose upon a pillow (at oral argument of the motion, this court viewed photographs of the plaster casting). Plaintiff never obtained the written consent of defendant Tiegs to do so. In November 1981, the plaster cast was taken to defendant Tiegs’ apartment, and remained there for approximately two months. Plaintiff contends that the plaster cast was taken to the apartment at the request of defendant Tiegs’ husband so that she could view it. Defendants contend that plaintiff in no way had the permission of defendant Tiegs to reproduce her likeness or sell reproductions from it. On or about January 27, 1982, building maintenance workers employed by defendants Ashforth and/or 829 came to the apartment in order to install a television set in a cabinet at the request of defendant Tiegs. While doing so, the workers broke the plaster sculpture beyond repair.
Besides exhibiting the sculpture, plaintiff had intended to make a limited edition of 10 bronze copies thereof. The price of each copy was to be $20,000. The sculpture was to be called "Sleeping Beauty”.
The amount sought in these actions is $200,000. Defendants assert a challenge under Civil Rights Law §§ 50 and 51 to plaintiff’s introducing evidence at trial as to his claim to recover damages for the 10 castings.
Civil Rights Law § 50 is a criminal law. Section 51 provides for equitable relief, and compensatory and punitive damages. Although generally the statutes are utilized to obtain affirmative relief, the concept that underlies them can be used defensively, as defendants do here. (See, Anabas Export v Alper Indus., 603 F Supp 1275 [SD NY 1985].)
Civil Rights Law § 50 provides: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.” Civil Rights Law § 51 provides in part: "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade *57 without the written consent first obtained as above provided [in Civil Rights Law § 50] may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person’s name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.”
Defendants contend that, because plaintiff made the plaster casting without the written consent of defendant Tiegs, and because his intention was to sell copies thereof, his actual and intended actions together would have constituted trade under the aforesaid statutes, for which defendant Tiegs could have obtained injunctive relief and damages, and thus that defendants cannot be held liable to plaintiff for damages due to his inability to have been able to sell copies of the plaster casting. Plaintiff argues that, as an artist, those actions by him would have fallen outside Civil Rights Law §§ 50 and 51; that defendant Tiegs (and derivatively the two other defendants) waived her right to invoke Civil Rights Law §§ 50 and 51; that he would have offered copies of the sculpture for sale outside New York State, beyond the reach of Civil Rights Law § 51; that the sculpture would not have been necessarily identifiable as defendant Tiegs; and that, if his actions fall under the two sections of the Civil Rights Law, then the laws are unconstitutional under the freedom of speech provisions of the First Amendment of the United States Constitution and New York Constitution, article I, § 8.
Because of this last contention, this court gave notice, pursuant to CPLR 1012 (b), to the Attorney-General of the State of New York that he could intervene in these actions in order to support the constitutionality of the statutes, if he wished. He declined to do so.
If Civil Rights Law § 50 were applicable to the circumstances here, as a penal provision it would have to be strictly construed. (Hornstein v Paramount Pictures, 292 NY 468, 471 [1944]; Binns v Vitagraph Co., 210 NY 51, 55 [1913].) However, because it is such a provision, it does not apply to the civil act here, and thus it is only section 51 upon which defendants may rely.
It has long been the law of this State that there is no *58 common-law right of privacy. (Howell v New York Post Co., 81 NY2d 115, 123 [1993]; Roberson v Rochester Folding Box Co., 171 NY 538, 556 [1902].) The Legislature enacted a limited statutory right of privacy in Civil Rights Law §§ 50 and 51 in response to Roberson. (Howell v New York Post Co., supra, at 123.) This statutory right of privacy is at times in tension with the right of a person to express himself or herself freely, as exemplified by the instant case.
One distinctive manner of human expression is through creation of works of art. The importance of this was recognized by the Appellate Division, First Department, in overturning an injunction against a book and a movie which was granted pursuant to Civil Rights Law § 51, and stating that to do otherwise "would outlaw large areas heretofore deemed permissible subject matter for literature and the arts.” (University of Notre Dame Du Lac v Twentieth Century-Fox Film Corp., 22 AD2d 452, 457 [1965].) However, the Court of Appeals has indicated in dictum that Civil Rights Law §§ 50 and 51 presumably were intended by the Legislature to apply to an artistically created portrait. (Cohen v Herbal Concepts, 63 NY2d 379, 384 [1984].) Later that year, the Court of Appeals reaffirmed that the statute must be more narrowly construed where the Federal and State constitutional rights of free speech are concerned. (Stephano v News Group Publs., 64 NY2d 174, 184 [1984]; accord, Brinkley v Casablancas, 80 AD2d 428, 432 [1st Dept 1981].) Nonverbal expression can be protected by the First Amendment. (Ward v Rock Against Racism, 491 US 781, 790 [1989] [music]; Zacchini v Scripps-Howard Broadcasting Co., 433 US 562, 578 [1977] [entertainment].) Nonverbal expression includes works of art like a sculpture. Courts have held that at least some works of art are protected by the First Amendment. (See, Serra v United States Gen. Servs. Admin., 847 F2d 1045, 1048 [2d Cir 1988] [sculpture]; Contemporary Arts Ctr. v Ney, 735 F Supp 743, 744 [SD Ohio 1990] [photographs]; Sefick v City of Chicago, 485 F Supp 644, 648 [ND Ill 1979] [sculptures].)
Defendants rely upon Young v Greneker Studios (175 Misc 1027 [Sup Ct, NY County 1941]) to support their position that the sculptures here are covered by Civil Rights Law §§ 50 and 51. In Young, the complaint alleged a cause of action under Civil Rights Law § 51. Plaintiff there was claiming damages against a defendant who had manufactured and sold numerous manikins, which had the likeness of plaintiff without plaintiff’s consent. The court held that the terms "portrait” *59 and "picture” in Civil Rights Law § 51 include "any representation, whether by photographing, painting or sculpture.” (Young v Greneker Studios, supra, 175 Misc, at 1028.) Defendant’s motion to dismiss was denied.
One significant difference between Young (supra) and the situation here is that in Young the defendant clearly was acting "for the purposes of trade”, which is barred by Civil Rights Law § 51. The defendant in Young was the manufacturer and seller of the large number of manikins sold. Here, plaintiff is an artist who created a work of art out of the alginate impression of defendant Tiegs. The sculpture was plaintiff’s creative expression which grew out of that impression. Just because he incidentally intended to sell a limited number of copies of his creation, that does not mean that he was acting "for the purposes of trade”. Part of the protection of free speech under the United States and New York State Constitutions is the right to disseminate the "speech”, and that includes selling it, at least under certain circumstances. In construing Civil Rights Law §§ 50 and 51, the United States Supreme Court reaffirmed its earlier statement: " 'That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment’ ” (citations omitted). (Time, Inc. v Hill, 385 US 374, 397 [1967].) Whether the sale of the castings of the sculpture for profit would bring it under Civil Rights Law §§ 50 and 51 does not depend on the motivation of plaintiff in selling them. (Stephano v New Group Publs., supra, 64 NY2d, at 185.) The dissemination for profit is not the sole determinant of what constitutes trade under these statutes. (Arrington v New York Times Co., 55 NY2d 433, 440 [1982].) It is the content that counts. (Stephano v New Group Publs., supra, 64 NY2d, at 185.)
Without people having the freedom to disseminate ideas, a society is not free. Works of art, including sculptures, convey ideas, just as do literature, movies or theater. Although a person’s right of privacy as protected by Civil Rights Law §§ 50 and 51 is also a very significant right, it must fall to the constitutionally protected right of freedom of speech. It is a maxim of constitutional law that, if a court can avoid declaring a provision of law unconstitutional, it must do so. (People v Felix, 58 NY2d 156, 161 [1983].) Here, this court need not rule at this time on the constitutionality of the statutes as applied to the facts here because the facts before the court lead to the conclusion, for the purpose of this motion, that Civil Rights *60 Law §§50 and 51 do not apply to plaintiffs actual and intended acts. An artist may make a work of art that includes a recognizable likeness of a person without her or his written consent and sell at least a limited number of copies thereof without violating Civil Rights Law §§ 50 and 51.
Furthermore, there is a question for the jury to determine as to whether the sculpture constituted a recognizable likeness of defendant Tiegs. This court could not make that determination from the papers and photographs alone. If not, the statutes would not apply. (See, Cohen v Herbal Concepts, supra, 63 NY2d, at 384.) Further, to the extent that plaintiff would have sold the castings outside of New York State, Civil Rights Law § 51, by its terms, would not apply, and the laws of the places of intended sale would have to be ascertained in order to determine whether there was a relevant right of privacy in those jurisdictions. (See, Reilly v Rapperswill Corp., 50 AD2d 342, 345 [1st Dept 1975]; Rosemont Enters. v Urban Sys., 42 AD2d 544 [1st Dept 1973].)
Finally, plaintiff contends that defendant Tiegs waived her right to defend under the Civil Rights Law because she posed for him on three occasions and because of the circumstances under which the plaster casting was at her home for two months. That argument must fail. Her posing for the initial impression in no way constituted a consent to his later making and selling copies of the sculpture from the impression. Furthermore, any express or implied oral consent to using her impression thereafter to make a sculpture and then sell copies thereof, or circumstances constituting an estoppel, would only serve to mitigate damages in an affirmative action under Civil Rights Law § 51. (See, Brinkley v Casablancas, supra, 80 AD2d, at 434.) Therefore, as those circumstances would only be a partial defense under an offensive action, they could not defeat her right to use the statute defensively.
Therefore, the motion is denied. There is a serious question about whether any of defendants are liable to plaintiff for their actions. Furthermore, if there is a finding of liability, and if the evidence at trial should differ from the facts offered on this motion and show that Civil Rights Law §§ 50 and 51 do apply to the circumstances here, then this court may have to revisit the issue of the constitutionality of Civil Rights Law § 51, as applied. Thus, the joint trial of these actions will be bifurcated.